Bevis, J.
 

 As plaintiff in error was plaintiff below, and defendant in error was defendant below, the parties will be herein designated as plaintiff and defendant respectively.
 

 Two grounds of error were chiefly urged by the plaintiff, and in our view of the case only these two grounds need be consideréd. They are:
 

 (1) That the defendant, by its conduct after the receipt of notice of plaintiff’s disability, waived the re
 
 *270
 
 quirement of the petition that the insured give notice and proof of such disability during its continuance.
 

 (2) That the trial court misconstrued the language of the contract, and thereby wrongfully deprived plaintiff of his right to the disability benefits claimed in his petition.
 

 We shall discuss these points in order.
 

 (1) We are of the opinion that the facts adduced at the trial raised no inference of a waiver by the defendant of the policy requirement regarding notice and proof of disability. According to plaintiff’s petition his disability terminated on April 21, 1929. He did nothing to advise the defendant of his condition, or of his claim, until May 29, when he wrote the company of his desire to file proof. Blank forms were sent him on June 5, and these forms were filled out and returned to the company on July 12. Defendant acknowledged their receipt on July 16, and on August 1 sent a representative to investigate the claim. On September 28 the defendant advised the plaintiff that his claim was rejected. Plaintiff bases his contention that there was a waiver largely upon the fact that the proof of claim filed on July 12 contained the following question and answer:
 

 “8. (a) Are you wholly disabled at the present time? —No.”
 

 He asserts that by proceeding with the investigation, with the plaintiff’s cooperation, the defendant waived the requirement of the policy.
 

 “A
 
 waiver is a voluntary relinquishment of a known right.”
 
 List & Son Co.
 
 v.
 
 Chase,
 
 80 Ohio St., 42, at page 49, 88 N. E., 120, 17 Ann. Cas., 61.
 

 Richards on Insurance (4th Ed.), Section 106, cited by plaintiff in his brief, elaborates upon this definition as follows:
 

 “Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding. This presupposes that the per
 
 *271
 
 son to be affected has knowledge of his rights, bnt does not wish to assert them. Intention to relinquish must appear, but acts and conduct inconsistent with intention to terminate the contract are sufficient # * *
 

 Interpreting the facts most favorably to the plaintiff, we are unable to see that they support any inference of waiver by the defendant. Assuming that the defendant, upon receipt of the proof of claim, had knowledge of the termination of the disability, there is nothing to show intention to abandon or relinquish its rights. It may have anticipated that plaintiff would sue. If so, it had a perfect right to make an investigation for- its own protection. Plaintiff was led to give up nothing by the investigation or by delay. The time for filing his proof, fixed by the contract, had expired before he first gave notice of his disability: There is nothing in the evidence from which the jury could properly have found either waiver or estoppel.
 

 (2) The other and more fundamental point upon which plaintiff insists is that the language of the new disability clause is subject to a construction which would allow him to recover. Referring to the clauses of the new contract, quoted
 
 supra,
 
 he says that, if proof of loss had been made during the period of disability, the company would have paid the benefits accruing from the beginning of that period to its end. Arguing from this premise, he contends that the true import of the contract is “health insurance” rather than insurance against total and permanent disability. In support of this contention, he claims that the language of the disability contract is ambiguous; 'that, unless it means what he says it means, the additional premium which he paid for the new “riders” on the old policies was exacted for no adequate, additional benefit; and that, in selling the new contract, agents of the company passed out company literature which tended to corroborate his claim.
 

 
 *272
 
 The following language of the policy he contends is ambiguous: “Or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the Insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has- been, totally disabled, as above defined, the following benefits will be granted.”
 

 The requirement of proof which establishes that the insured “is” disabled would seem upon its face to necessitate the submission of such proof during the continuance of the disability, but the plaintiff contends that the succeeding words, “immediately preceding receipt of proof has been totally disabled,” imply that proof may be filed within a reasonable time after the disability has ceased. Considering the contract as a whole, however, there is no ambiguity unless an assumption is first made that the agreement is one to pay for temporary disability. But we may not read a meaning into the clear language of the contract and then find ambiguity in the words which deny that meaning.
 

 Indeed, plaintiff’s case rests wholly upon the theory that the policy provides payments for .temporary disability, since a disability ended before proof of it is made must of necessity be temporary.
 

 When, however, we turn to the language of the disability contract, we find in large type at its beginning the words, “TOTAL AND PERMANENT DISABILITY.” Thereafter the agreement provides for the payment of monthly income and the waiver of premiums upon proof that the insured is totally and
 
 presumably
 
 permanently disabled. The contract definition of total disability includes the loss of both hands, both feet, both eyes, or of one hand and one foot. But bodily injury or disease, incapacitating the insured for any work or occupation or business for remuneration or profit, is also within the definition.
 

 Now, of course, total disability appears forthwith
 
 *273
 
 upon proof of the loss of both hands, but in many cases total incapacity for work or business could only be
 
 known
 
 to be permanent after the person concerned was dead. It was therefore necessary, as a matter of practice, that the policy establish some criterion upon which a presumption of permanent disability might be based, so as to enable the payment of benefits during the insured’s life.
 

 The contract accordingly provides for proof of permanent disability in two classes of cases: (a) That class in which the insured is and will be continuously disabled for life, for example, having both hands cut off; and (b) that class in which “the proof submitted is not conclusive as to the permanency of such disability, ’ ’ but in which there is a presumption of permanency, that is, in which the proof “establishes that the Insured is and for a period of not less than three consecutive months immediately preceding receipt of proof has been totally disabled.”
 

 If the presumptively permanent disability cease after payments begin, the contract provides for their discontinuance. If the cessation of disability be shown before the payments begin, plainly no payments need be made.
 

 Thus analyzed, the language used becomes wholly clear and entirely free from ambiguity.
 

 When the meaning of the contract can be fully and clearly ascertained from its own words, we are at liberty to go no further in search of aid in its interpretation. Comparison of the old with the new form of contract, quoted
 
 supra,
 
 shows clearly that for his additional premium the insured got the right to benefits in certain cases from the inception of disability, instead of from the end of a three-month period. But whether this additional benefit was adequate, in view of the increased premium charged, becomes immaterial to the construction of the contract where its language is entirely clear and unambiguous.
 

 
 *274
 
 It does not definitely appear from the record that the sales literature put out through defendant’s agents was ever shown to the plaintiff, but, if it was, it cannot avail to change the interpretation of a contract which in and of itself is clear and free from ambiguity.
 

 The identical language used in this contract was under consideration in
 
 Gottlieb
 
 v.
 
 New York Life Ins. Co.,
 
 136 Misc., 194, 240 N. Y. S., 568. In that case the court held that it was not a compliance with the contract to offer proof of disability one year after the disability had ceased. See, also,
 
 Bergholm
 
 v.
 
 Peoria Life Ins. Co.,
 
 284 U. S., 489, 52 S. Ct., 230, 76 L. Ed., 416.
 

 In our opinion, therefore, there is no error in the judgment of the Court of Appeals, and that judgment is accordingly affirmed.
 

 Judgment affirmed.
 

 Stephenson, Jones, Matthias and Zimmerman, JJ., concur.
 

 Weygandt, C. J., not participating.