OPINION
{¶ 1} This accelerated calendar appeal is before us on the notice of appeal of appellant, James A. Celeste, from the order of the Lake County Court of Common Pleas granting summary judgment in favor of appellee, Wiseco Piston.
 {¶ 2} By way of background, on December 28, 2001, appellant filed a complaint alleging that he was wrongfully terminated from his employment with appellee in violation of public policy after he expressed concerns to individuals and management about the safety of its motorcycles. Specifically, the complaint maintained "that during the course of his employment, appellant made numerous complaints and expressed concerns that the making of the proposed modifications to the motorcycle engines contemplated by [appellee] without adequate safety testing and adjustments would result in injury and/or death of the people purchasing the modification." As a result of "expressing these concerns to individuals and management[,]" appellant claimed that his employment was terminated in February 2001. According to the complaint, appellant's termination was "contrary to statute and public policy, including Ohio's tort laws" and breached appellant's rights in violation of "Ohio law as set forth inGreeley v. Miami Valley Maintenance Contractors49 Ohio St.3d 228 (1990) and its progeny."
 {¶ 3} On January 31, 2002, appellee filed a motion to dismiss appellant's complaint for failure to state a claim upon which relief can be granted. To support its position, appellee argued that appellant's wrongful termination claim was based upon the public policy embedded in R.C. 4113.52, Ohio's whistleblower statute. As a result, appellee concluded that appellant's complaint was barred by the 180-day limitations period set forth in R.C. 4113.52 and appellant's failure to allege that he complied with the written notice requirements of the statute." Appellant, however, pointed out that he was not bringing a whistleblower claim pursuant to R.C. 4113.52; rather, he was attempting to set forth a separate common law tort claim for wrongful discharge in violation of public policy, which was subject to the four-year statute of limitations and did not require compliance with the notice requirements contained in R.C.4113.52.
 {¶ 4} After taking the matter under advisement, the trial court issued a judgment entry on March 20, 2002, granting appellee's motion to dismiss appellant's complaint pursuant to Civ.R. 12(B)(6). In reaching this determination, the trial court noted that in his memorandum in opposition to the motion to dismiss, appellant admitted that his common law wrongful discharge claim was based upon the public policy contained in R.C. 4113.52.
 {¶ 5} Appellant appealed the trial court's decision. On appeal this court concluded that the complaint stated a claim for common law wrongful discharge in violation of public policy, not a statutory whistleblower's claim. Appellee's granted motion to dismiss was reversed, and the case was remanded for further proceedings.
 {¶ 6} After remand, discovery commenced. On February 6, 2004, appellee filed a motion for summary judgment. The trial court granted summary judgment in favor of appellee. The court found "Defendant's Motion for Summary Judgment well-taken" as to all four necessary elements of appellant's Greeley claim.
 {¶ 7} From this decision, appellant filed a timely notice of appeal with this court and now submits the following sole assignment of error for our consideration:
 {¶ 8} "The trial court erred in granting defendant-appellant [sic] Wiseco Piston, Inc.'s motion for summary judgment."
 {¶ 9} Initially, we note that summary judgment is appropriate when the moving party establishes the following: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and, (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385.
 {¶ 10} If the moving party meets its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280,296. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party. Civ.R.56(E).
 {¶ 11} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711. The Brown court stated that "* * * we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741. In addition, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion.Id.
 {¶ 12} Appellant asserts his claim for wrongful discharge should have survived summary judgment as a matter of law, because the interests of the state include protecting consumers from defective products. Thus, appellant argues that an employee, who claims to have been discharged because he complained of insufficient testing of a product, should have a cause of action for wrongful discharge under Ohio's Product Liability Act, R.C.2307.71 et seq.
 {¶ 13} Here, appellant alleged the following Greeley tort claim for wrongful termination in violation of public policy: "contrary to statute and public policy, including Ohio's tort laws, and constitutes a breach of [appellant's] rights in violation of Ohio law as set forth in Greeley v. Miami ValleyMaintenance Contractors 49 Ohio St.3d 228 (1990) and its progeny."
 {¶ 14} With respect to his wrongful discharge claim, the trial court noted that appellant failed to comply with the mandates of the whistleblower statute. The court further stated that:
 {¶ 15} "However, R.C. 2307.71 does not specifically prohibit an employer from disciplining or retaliating against an employee who complains that the company is manufacturing defective products. The statute merely provides a civil remedy for persons who have purchased or used a defective product. Therefore, Plaintiff is unable to identify a source of public policy to support his Greeley claim independent from the public policy embodied in R.C. 4113.52 and consequently, cannot establish the clarity element."
 {¶ 16} Even though he was unable to establish a whistleblower claim under R.C. 4113.52, appellant was not barred from maintaining a Greeley claim that is a common law tort action against the employer [appellee] for wrongful discharge in violation of public policy.[1]
 {¶ 17} As this court stated in appellant's previous appeal to this court, appellant can maintain a Greeley claim whether or not he complied with the whistleblower statute, R.C. 4113.52, if he can "identify a source of public policy separate from the public policy embodied in R.C. 4113.52." Celeste v. WisecoPiston, 11th Dist. No. 2002-L-052, 2003-
 {¶ 18} Ohio-703, at 25 citing, Doody v. Centerior EnergyCorp. (2000), 137 Ohio App.3d 673, 679. See, also, Kulch v.Structural Fibers, Inc., (1997), 78 Ohio St.3d 134 at 162,Evans v. PHTG, Inc., 11th Dist. No. 2001-T-0054, 2002-Ohio-3381 at ¶ 25.
 {¶ 19} Contrary to appellant's assertion, in his earlier appeal this court did not hold that appellant satisfied the element of clarity under Ohio's Product Liability Act. In that appeal, this court held that within the context of civil rule 12(B)(6), "* * * it is arguable that Ohio's Product Liability Act, R.C. 2307.71, et seq., may contain a public policy prohibiting employers from terminating an employee who reports to management his/her concerns about consumer safety as to the products being produced by the employer. Accordingly, there was an arguable theory upon which appellant may recover." (Emphasis added). Celeste v. Wiseco Piston, 11th Dist. No. 2002-L-052, 2003-Ohio-703, at ¶ 29. This court further held: "* * * appellant's complaint was sufficient to withstand appellee's motion to dismiss." Id.
a. For the reasons that follow, we determine that appellant failed to identify a public policy source separate from R.C.4113.51 et seq.
 {¶ 20} "`Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the Ohio General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." Painter v. Graley, 70 Ohio St.3d 377,1994-Ohio-334, at paragraph three of the syllabus.
 {¶ 21} Furthermore, in Greeley, the Ohio Supreme Court stated "[t]oday, we only decide the question of a public policy exception to the employment-at-will doctrine based on violation of a specific statute. This is not to say that there may not be other public policy exceptions to the doctrine but, of course,such exceptions would be required to be of equally seriousimport as the violation of a statute." Id. at 235. (Emphasis added.)
 {¶ 22} Thus, in determining whether appellant set forth a claim for wrongful discharge appellant had to satisfy each of the following elements:
 {¶ 23} "(1) a clear public policy manifested in a state or federal constitution, statute, administrative regulation, or common law (clarity element); (2) the discharge under such circumstances would jeopardize public policy (jeopardy element); (3) the discharge was motivated by conduct related to the public policy (causation element); and (4) the employer lacked an overriding legitimate business justification for the dismissal (overriding justification element)." Kulch at 151; Painter at 384; Doody at 680; Bentley v. API Pattern Works, Inc., 11th Dist. No. 2000-L-140, 2001-Ohio-3921, at 11-12; Gargas v.Streetsboro, 11th Dist. No. 2000-P-0095, 2001-Ohio-4334, at 20-21. The clarity and jeopardy elements involve questions of law, while the causation and overriding justification elements are questions of fact. Kulch at 151.
 {¶ 24} As to the first element of clarity, appellant suggests that there is a public policy espoused by the Ohio's Product Liability Act, which favors the protection of consumers from defective products. We agree.
 {¶ 25} R.C. 2307.71 provides a civil remedy for persons who have purchased or used a defective product. However, R.C. 2307.71
does not specifically prohibit an employer from terminating an employee who complains that the company is conducting insufficient testing of a product that could result in an unsafe product being sold to consumers.
 {¶ 26} Rather, there is a specific public policy embodied in the whistleblower statute which "prohibits the retaliatory firing of an employee who reports to his employer some criminal offense or safety hazard occurring at the workplace." Wood v. Dorcas
(1998), 126 Ohio App.3d 730, 736. So, if appellant wished to rely on the public policy embedded in the whistleblower statute to establish his Greeley claim, appellant had to comply with the requirements of R.C. 4113.51 et seq. Kulch at 162. Appellant did not.
 {¶ 27} According to Kulch, an employee can maintain a claim under one or all of the following: (1) a statutory cause of action for violation of the whistleblower statute pursuant to R.C. 4113.51 et seq.; (2) a Greeley tort claim based on the public policy embodied in the whistleblower statute so long asthe statutory requirements are met; and/or (3) a Greeley tort claim based on the public policy embedded in other sources, such as the Ohio and United States Constitution, administrative rules and regulations, and common law. Kulch at 150. Recovery, however, can only be under one theory. Id at 162.
 {¶ 28} Further, the Kulch Court held that: "* * * the legislature clearly intended to encourage whistleblowing only tothe extent that the employee complies with the dictates of R.C.4113.52. As we held in Contreras, 73 Ohio St.3d 244 * * * syllabus: `In order for an employee to be afforded protection as a "whistleblower," such employee must strictly comply with the dictates of R.C. 4113.52.' Failure to do so prevents the employee from claiming the protections embodied in the statute. * * * The obvious implication of Contreras is that an employee who fails to strictly comply with the requirements of R.C. 4113.52 cannot base a Greeley claim solely upon the public policy embodied in that statute." (Parallel citation omitted.) Kulch at 153.
 {¶ 29} In the case sub judice, appellant claims that his termination for complaints about the testing procedures of a product to his employer violates public policy of the Product Liability Act, which serves to protect consumers from defective products. However, in essence appellant argues that public policy should be expanded to employee claims for wrongful discharge based upon complaints to an employer regarding testing of a product that could result in an unsafe product being sold to consumers. However, we find that this type of public policy upon which appellant relies is embodied in the whistleblower statute. Appellant's, failure to comply with the statutory requirements of R.C. 4113.52 is fatal to his Greeley claim, as well as to any R.C. 4113.52 claim. Evans (clarity not established because the relied upon statute did not prohibit an employer from termination of an employee and whistleblower statute would apply to the employee). For the foregoing reasons, appellant has failed to identify a source of public policy other than R.C. 4113.51 et seq. to support his Greeley claim. Hence, the trial court properly granted appellee's motion for summary judgment.[2]
 {¶ 30} Based upon the foregoing, appellant's sole assignment of error is without merit and the judgment of the trial court is affirmed.
Grendell, J., concur in judgment only with Concurring Opinion, O'Neill, J., dissents.
[1] Appellant is barred from bringing a Greeley claim against public policy embodied in R.C. 4113.51 et seq.; as he failed to comply with the dictates of the statute. Kulch v. StructuralFibers, Inc., 78 Ohio St. 3d 134, 153, 162, 1997-Ohio-219.
[2] Appellant also challenges the trial court's findings as to the elements of jeopardy, cause, and overriding justification. As all elements are required to prevail in a Greeley claim, it is unnecessary for this court to address the remaining issues of appellant's sole assignment of error.